IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

POCONO REALTY COMPANY, EDWIN :
KRAWITZ, BARBARA KRAWITZ, :
         Plaintiffs :
         :
    v. : 3:CV-08-0165
         : (JUDGE VANASKIE)
LAMAR ADVERTISING COMPANY :
A Corporation, Successor to Martin :
Media, A California Limited Partnership, :
         Defendant :

MEMORANDUM

At issue in this matter is the scope of express easements granted in an Agreement For Purchase and Sale of Assets (referred to as the "Agreement") by Plaintiffs Pocono Realty Company ("Pocono Realty"), Edwin Krawitz, and Barbara Krawitz to the predecessor-in-interest of Defendant Lamar Advertising Company ("Lamar"). Plaintiffs have brought claims against Defendant for ejectment and for the recovery of rental income, asserting that the easements do not entitle Lamar to maintain billboards on Plaintiffs' property without paying rent. (See Complaint, Dkt. Entry 1-2.) Lamar has moved for summary adjudication of all Plaintiffs' claims and seeks summary adjudication of its counterclaim for attorneys fees and costs pursuant to the Agreement. (Def.'s Mot. Summ. J., Dkt. Entry 11.) Plaintiffs have likewise moved summary judgment. (Pls.' Mot. Summ. J., Dkt. Entry 17.)

Because the Agreement is susceptible to only one reasonable interpretation – that the scope of the easement includes the right to use the ground upon which the billboard structures

sit to support the billboards – and the parties' conduct supports this interpretation, summary judgment in favor of Defendant will be granted.  Defendant will also be awarded reasonable attorneys fees and costs for defending this action.

I.  BACKGROUND[1]

Plaintiff Edwin Krawitz is a member of the Pennsylvania bar in good standing and has practiced for over fifty years, a substantial portion of which has included the representation of parties in real estate transactions.  (Def.'s SMF, ¶ 13.) On January 2, 1998, Martin Media, a California Limited Partnership and predecessor-in-interest to Lamar Advertising Company, entered into an Agreement with Mr. Krawitz, his wife, Barbara Krawitz, and Pocono Realty (owned by Mr. Krawitz) for the purchase and sale of assets, which included certain sign structures, easements, licenses, books and records, prepaid deposits, permits, land leases, leasehold rights and advertising contracts owned by Plaintiffs.  (Def.'s SMF, Dkt. Entry 12, at 1.)  The pertinent terms and conditions of the Agreement are:

> 1. <u>Purchase and Sale of Assets and Easements.</u>  Seller agrees to sell, transfer, assign and deliver to Buyer and Buyer agrees to purchase from Seller all of Seller's right, title and interest in and to the Assets, pursuant to

---

[1]Defendant complied with Local Rule of Court 56.1 by submitting in numbered paragraphs statements of fact contended to be undisputed and supported by citation to the summary judgment record.  (Defendant's Statement of Undisputed Material Facts ("SMF"), Dkt. Entry 12.)  Plaintiffs have stipulated to all but 2 of the 14 numbered statements, disputing only paragraphs 4 and 11.  (Plaintiff's Counter Statement of Material Facts ("CSMF"), Dkt. Entry 17-5.)  Consequently, many of the material facts are undisputed. Reference to Defendant's Statement signifies that the fact is admitted and not in dispute.

2

the terms and conditions contained in this Agreement.

1.1 In addition to the Assets, Buyer shall purchase from Seller and Seller shall sell to Buyer <u>permanent easements for the placement</u>, operation and maintenance of specified outdoor advertising structures on the real property of Seller (the "Boards"), all as more fully described in the easements attached to this Agreements as <u>Exhibit "B"</u> (The "Easements").  The Easements <u>shall include</u> unrestricted access rights to each of the Boards for construction, maintenance, operation and utilities, <u>and the real property upon which the Boards are located shall be subject in perpetuity to such Easements</u>.

1.2.  Seller's grant of the Easements to Buyer is a material element of Buyer's willingness to purchase the Assets.

2.  <u>Purchase Price.</u>  As full and complete consideration for the Assets and the Easements, Buyer shall pay Seller Seven Hundred Fifty Thousand Dollars ($750,000.00) (the "Purchase Price").

(Agreement for Purchase and Sale of Assets ("Agreement"), Dkt. Entry 12-2, at 1.)  The Agreement identifies the Assets being purchased as those listed on a separate document labeled Exhibit "A," which, in turn, states:

1.  The list of assets attached as Attachment No. 1 hereto, including all advertising structures, advertising contracts, easements, licenses, permits, leases and leasehold rights related thereto; and

2.  Easements.

(Agreement, at 9.)[2]

---

[2]The Agreement also contains the following clauses:

14.1 If any action or other proceeding is brought for the enforcement of this Agreement, because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement,

Attachment No 1. to Exhibit "A" to the Agreement, entitled "Krawitz Sign Inventory," lists six billboard locations. The three locations at issue here are known as Locations 3, 4, and 6, and are identified, respectively, as "Exit 51 and I-80," "I-80 S/L 500' East of Exit 51," and "I-80 S/l 1500' East on Exit 51". (Def.'s SMF, ¶ 4; Attachment No. 1., Dkt. Entry 12-2, at 10.) The land upon which the billboards are situated on Locations 3, 4, and 6 is owned by the Krawitzes or Pocono Mountain.[3] The "Annual Lease" column on the "Krawitz Sign Inventory" indicated that the annual lease amount for Locations 3, 4, and 6 was zero.[4] (Id.)

---

the successful or prevailing party shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding in addition to any other relief to which the party may be entitled.

14.2 This Agreement and exhibits hereto constitute the entire agreement among the parties pertaining to the subject matter contained and supersede all prior or contemporaneous agreements, representations and understandings of the parties. No supplement, modification or amendments to this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

(Agreement, Dkt. Entry 12-2, at 6-7.)

[3] The "Krawitz Sign Inventory" identified the owners of the other 3 locations where the other billboards that were the subject of the Agreement were situated. It appears that Plaintiffs had entered into leases with the owners of those properties for placement of the billboards. The "Krawitz Sign Inventory" listed the annual rental amount for the three billboard locations not owned by Plaintiffs.

[4] Mr. Krawitz explained that "[t]he 'zero' in the Sign Inventory simply reflects that Krawitz had no lease with himself and/or with and between Pocono Realty and Krawitz. . . ." (Krawitz Aff., Dkt. Entry 17-2, at 4.)

Exhibit B of the Agreement contains separate easements for each of the three locations, and is incorporated into the Agreement between the parties. (Def's. SMF, ¶ 5.) The standard terms of the easements are as follows:

> THIS EASEMENT made this 2nd day of January, 1998 between Edwin Krawitz and Barbara Krawitz (h/w) ("Grantor") and Martin Media, A California Limited Partnership ("Grantee").
>
> WHEREAS, Grantor is the owner in fee simple of certain tract of land situate in the Borough of East Stroudsburg, Monroe County, Pennsylvania, as more particularly described on Exhibit "A" attached hereto and made a part hereof (hereinafter "Grantor's Property");
>
> WHEREAS, Grantee is or is about to become the owner of a certain billboard structure situate on Grantor's Property ("Billboard") and requires a <u>perpetual right of way for use, access and maintenance of the Billboard</u>; and
>
> WHEREAS, Grantor has agreed to grant to the Grantee <u>an easement for such use, access and maintenance</u>, upon the terms and conditions set forth herein.
>
> NOW, THEREFORE, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by Grantee to Grantor, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto covenant and agree as follows:
>
> 1. The Grantor does hereby give and grant to the Grantee, its successors and assigns, <u>a perpetual easement in gross</u> in common with Grantor ("Easement") over a portion of Grantor's Property more particularly shown on Exhibit "B".
>
> 2. <u>Grantee may use the Easement for the installation, servicing and maintenance of a 10x30 foot double/single faced illuminated Billboard</u>. Grantee shall have the right to change the size, design and structure of the Billboard, as determined in Grantee's sole discretion. <u>Grantor may use the Easement for its reasonable purposes</u>, provided Grantor's use does not

interfere or compete with Grantee's use.  Grantor shall indemnify and hold harmless Grantee from and against any and all claims, damages, costs and judgments arising out of Grantor's use of the Easement.

      3.  The Easement shall include <u>ancillary rights of ingress and egress</u> over the balance of Grantor's Property for the purpose of installation, servicing and maintenance of the Billboard located on the Easement.  Grantor may restrict such rights over portions of Grantor's property improved with buildings or otherwise, provided Grantee has adequate access to the Easement.

      4.  The Easement shall include the right to install, service and maintain electrical service lines under and over the Grantor's Property for the purpose of supplying electricity to the Billboard located on the Easement.

      5.  Grantor covenants and agrees that <u>no development, trees, structures, signs, fences or other items located on Grantor's Property shall block or obscure the view of the billboard located on the Easement</u> for traffic traveling in either direction along Interstate Route 80.  In the event that any such item does so obscure the view of the Billboard, Grantee shall have the right to remove such obstruction and Grantor shall reimburse Grantee for the costs of such removal, provided however that Grantee is and shall be responsible for normal clearing or branches, bush and the like that might naturally grow in and about the Billboards.

      6.  Grantee shall have the right to sell, convey, transfer and encumber the Easement and the Easement shall be binding on the successors and assigns of Grantor

(Exhibit "B", Dkt. Entry 12-2, at 11-15, 20-23, 28-31.)

Each of the three easements contains an Exhibit A that provides a legal description of the easement.  (Def.'s SMF, at ¶ 7.)  The description includes the land which is appurtenant to the property upon which each sign structure is located, along with a description of the property

upon which each sign structure is located.⁵ (Id.)

By letter dated November 30, 2007, nearly ten years after executing the Agreement and easements, Mr. Krawitz asserted an entitlement to rent for the billboard structures located on the properties that are the subject of the easements. (Krawitz Letter, Dkt. Entry 12-4, at 5.) In his letter, Mr. Krawitz stated:

> As we generally discussed on the phone, you have had easements and billboards on three lots in the Borough of East Stroudsburg on which you have five advertising faces. Up until now, I have never requested a reasonable rent for your occupancy on the said lots. We have been paying the taxes annually and have not made demand upon you. I request now that we come to terms on reasonable rent for continued occupancy in a sum to be negotiated.

(Krawitz Letter, at 5.)⁶ Defendant denied any obligation to pay rent, asserting an entitlement to use of the property on which the billboards are located under the terms of the easements.

Plaintiffs filed a Complaint in the Court of Common Pleas of Monroe County on December 31, 2007, asserting claims of ejectment and loss of rental income and mesne profits. (State Court Compl., Dkt. Entry 1-2.) On January 25, 2008, Defendant removed this action to

---

⁵For Realty Transfer Tax purposes, the parties reported that the consideration paid for locations 3 and 4 was $32,000 per easement. (Dkt. Entry 12-2, at 19 & 27). The consideration attributed to the easement for location 6 was $16,000. (Id. at 35.)

⁶When asked when he first realized that he would be entitled to rent in addition to the $750,000 that was paid pursuant to the Agreement, Mr. Krawitz responded: "I don't think I could fix a time for that. I would have to say in the last several years. That's about the best that I can do." (Krawitz Dep., Dkt. Entry 24-2, at 21.) He further explained: "Well, again, relating to the fact that there were boards on my land and I was not receiving any compensation for the use of the land. That occurred to me." (Id.)

this Court. (Notice of Removal, Dkt. Entry 1.) On February 18, 2008, Defendant answered the Complaint, and asserted a Counterclaim for attorneys fees and costs pursuant to paragraph 14.1 of the Agreement. (Dkt. Entry 3.) Thereafter, Plaintiffs and Defendant moved for summary adjudication of all counts of the matter. (Dkt. Entries 11 & 17.) The motions are fully briefed and now ripe for resolution.

II. DISCUSSION

    A. Standard of Review

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the

nonmoving party's favor.  Anderson, 477 U.S. at 256-57.  Merely conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment.  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

    B.  The Scope of the Easements

The linchpin of this dispute lies in the scope of the easements.  Plaintiffs claim that, by virtue of the sale Agreement, Defendant only acquired the billboard structures and rights-of-way easements, or "rights of passage," to access the billboards.  Plaintiffs assert that the land occupied by the billboards is not part of the easements, but part of Plaintiffs' land, for which they are entitled to collect rent.  They contend that prior to their demand for rent, Defendant occupied the land on which the billboards are situated as tenants at will, and now occupy the land as tenants by sufferance.

Defendant denies that any landlord-tenant relationship exists.  Instead, argues Defendant, it bought the right to occupy and use the land on which the billboards are located when Plaintiffs conveyed the easements to it.

The starting point for determining the interest acquired by Defendant is, of course, the

language of the parties' Agreement and the instruments of conveyance.  See Quarry Office Park Assocs. v. Phila. Electric Co., 576 A.2d 358, 361-62 (Pa. Super Ct. 1990).[7]  As explained in Sigal v. Manufacturers Light & Heat Co., 299 A.2d 646, 649 (Pa. 1973):

> To ascertain the nature of the easement created by an express grant . . . the intention of the parties [must be] ascertained from the language of the instrument.  Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

And as noted in Hann v. Saylor, 562 A.2d 891, 893 (Pa. Super. Ct. 1989), "[i]n the case of an express grant or reservation, the extent of the right depends upon the terms of the instrument conveying the interest, as interpreted by applying general principles of contract law."  "'[T]he same rules of construction apply to deeds granting easements as to contracts generally.'" Southall v. Humbert, 685 A.2d 574, 577 (Pa. Super. Ct. 1996).

The Pennsylvania Supreme Court has summarized the relevant principles applicable to contract interpretation:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties.  The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself.  The whole instrument must be taken together in arriving at contractual intent.  Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed.  When a writing is clear and

---

[7]There is no dispute that Pennsylvania law governs the outcome of this action removed to federal court on the basis of diversity of citizenship.

unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Murphy v. Duquesne Univ. Of The Holy Ghost, 777 A.2d 418, 429-30 (Pa. 2001) (internal citations omitted).

Defendant argues that the Agreement is only subject to one reasonable interpretation – "that Krawitz and Pocono Realty agreed to sell easements for the placement and operation of the outdoor advertising signs and were never entitled to the collection of rent." (Def.'s Br. Supp. Mot. Summ. J., Dkt. Entry 15, at 24.) Plaintiffs disagree, arguing the Agreement's silence with respect to rent payments indicates that they retained the right to require Defendant to pay rent for its possession of their land. (Krawitz Aff., Dkt. Entry 17-2, at 3-4.)

The first sentence of Section 1.1 of the agreement conveys the intention of Plaintiffs to sell a "permanent easement . . . for the placement, operation and maintenance" of the structures that the buyer purchased. (Agreement, Dkt. Entry 12-2, at 1.) A plain reading of this sentence would suggest that the bundle of interests acquired by Defendant included the right to placement of its structures on the properties that are the subject of the easements. This Court cannot assume that the words "placement" and "operation" were chosen carelessly. See

Murphy, 777 A.2d at 429-30. Although the billboards were already on the properties at the time the Agreement was consummated, the inclusion of the word "placement," permitting defendant to place the billboards on Plaintiffs' land, indicates that the area occupied by the billboards fell within the easements. Likewise, a plain reading of "operation" indicates that the land upon which the billboards operate is considered part of the easement.

Any uncertainty as to the meaning of the first sentence of Section 1.1 is dispelled by that section's next sentence. It provides that – "[t]he Easements shall include unrestricted <u>access rights</u> to each of the Boards for construction, maintenance, operation and utilities, <u>and the real property upon which the Boards are now located shall be subject in perpetuity to such Easements.</u>" (Agreement, Dkt. Entry 12-2, at 1) (emphasis added). A plain reading of this sentence indicates that Plaintiffs granted Defendant a perpetual easement for the real property upon which the billboard were placed. If only access rights were conveyed, the parties would have simply ended Section 1.1 without the conjunctive clause, <u>"and the real property upon which the Boards are now located shall be subject in perpetuity to such Easements."</u>[8] Assuming, as Pennsylvania law demands, that the parties purposely employed this language, it

---

[8]A court may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question." <u>Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.</u>, 707 F.2d 775, 778 (3d Cir. 1983) (citing <u>Celley v. Mutual Benefit Health & Accident Assoc.</u>, 324 A.2d 430, 434 (Pa. Super. Ct. 1974)). Here, it would be difficult to formulate more precise language for the second sentence of Section 1.1. The sentence plainly conveys access rights <u>and</u> a right to the use of real property occupied by the billboard structure.

is apparent that each easement included the land upon which the structure sits. Under Mr. Krawitz's interpretation of the contract, the conjunctive clause is rendered meaningless.

This interpretation of Section 1.1 is supported by the description provided for in the easements themselves. Each easement acknowledges that Defendant "requires a perpetual right of way for use, access and maintenance of the Billboard;" (Exhibit "B", Dkt. Entry 12-2, at 12.) To meet Defendant's need, the Grantor "agreed to grant to the Grantee an easement for such use, access and maintenance . . . ." (Id.) Consistent with this declared intention, the Easement explicitly provides that "[t]he Grantor does hereby give and grant to the Grantee, its successor and assigns, a perpetual easement in gross . . . for the installation, servicing and maintenance of a . . . Billboard." (Id.)

An "easement in gross" confers on the grantee the right to use the land of another for a particular purpose, but does not run with the land. See Ariel Land Owners, Inc. v. Dring, No. Civ. 3:01-CV-0294, 2005 WL 2416123, at *5 (M.D. Pa. Sept. 30, 2005). "Use" is defined as: "The application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted . . . ." Black's Law Dictionary 1577 (8th ed. 2004). Giving full effect to the plain meaning of this description, it is evident that the parties contemplated that the Easements were for the particular purpose of displaying billboards – meaning, placing the billboard structures on the property in question in order to advertise.

13

Buttressing the conclusion that the easements conveyed the right to place billboards on the property without any obligation to make any additional payment is the fact that each easement specifies that it "shall include <u>ancillary</u> rights of ingress and egress over the balance of Grantor's property for the purpose of installation, servicing and maintenance of the Billboard located on the Easement." [Emphasis added.] Black's Law Dictionary defines "ancillary" as "supplementary; subordinate."[9] <u>Black's Law Dictionary</u> 95 (8th ed. 2004). The rights of ingress and egress were not the only rights conveyed, but were subordinate to the right to use of Plaintiffs' property for placement of the billboards. As Defendant aptly points out, if Plaintiffs' position were accepted, this paragraph would become surplusage – a restatement of rights already conveyed, an approach to contract interpretation that is disfavored. <u>See</u> <u>J.C. Penney Life Ins. Co. v. Pilosi</u>, 393 F.3d 356, 364 (3d Cir. 2004) ("Pennsylvania courts have held that '[n]o provision within a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it.'"). If the parties intended to limit the scope of the easement, they would have put some language to that effect in the description of the easement. The fact that such language is missing militates in favor of finding the scope of the easement included the property upon which the billboard structure sits.[10]

---

[9]According to Plaintiffs, "ancillary means [Defendant] had rights to go over any portion of the property to get to the billboard." (Krawitz Dep., Dkt. Entry 24-2, at 29.) The definition of "ancillary," and the plain meaning of the sentence, belie this interpretation.

[10]Plaintiffs' reliance upon an earlier draft of the Agreement, which contemplated a conveyance of "real property," and Mr. Krawitz's statements of his understanding of the

The conduct of the parties likewise militates in favor of finding the parties intended an easement that includes the right to use of the real property upon which the billboards are situated. It was not until some ten years after the Agreement was consummated that Mr. Krawitz advised Defendant that he wanted rent paid for occupying the land upon which the billboards are located. For ten years Defendant operated, maintained, and used the billboard structure without objection from Plaintiffs or any demand for some sort of rent payment.

Plaintiffs do not dispute that an easement was conveyed, but insist that "[a]n easement confers no title or right to possession of the physical property or to any part of the servient estate." (Pls.' Br. Opp'n Mot. Summ. J., Dkt. Entry 18, at 7.) Plaintiffs further contend that "[t]he granting of an easement to Defendant did not result in the surrender of Plaintiffs' right to the enjoyment of the rest of the property including the right for its use to receive rents and profits therefrom." (Pls.' Br. Opp'n Mot. Summ. J., Dkt. Entry 18, at 9.)

Plaintiffs are correct that an easement does not confer title, see In re Condemnation Proceeding by South Whitehall Tp. Authority, 940 A.2d 624, 628 (Pa. Commw. Ct. 2008), but

---

meaning of an easement, are unavailing. The Agreement includes an integration clause, thus precluding resort to such parol evidence as prior drafts of the contract or negotiators' statements of what they understood to be the meaning of the terms used in the executed agreement. See Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 772-73 (M.D. Pa. 2008). Neither the Agreement nor the easements are unclear as to what interests were acquired by Defendant. It is clear beyond any doubt that Defendant acquired the right to the use of Plaintiff's property to display billboards. Because the Agreement and easements are unambiguous, and there is no claim of fraud, accident or mistake, this case is properly resolved on the basis of the plain meaning of the written instruments executed by the parties. Id.

15

this misses the point.  Defendant is not claiming that it received title to any part of Plaintiffs' real property.  Defendant contests Plaintiffs' interpretation of the scope of the interests Defendant obtained under the easements.

Plaintiffs further insist that a perpetual easement cannot include a "right of use" as a matter of law, so Defendant could not maintain or use the billboard structure on their property.  Plaintiffs assert that: "[o]ne who is granted an easement does not 'possess' the land subject thereto, and, therefore, one does not by virtue of such easement have a right to use or occupy the land as tenancy."  (Pls.' Reply Br., Dkt. Entry 24, at 4.)  In support of this proposition, Plaintiffs rely on Clements v. Sannuti, 51 A.2d 697 (Pa. 1947).

In Clements, the owner of adjoining lots 1344 and 1346 erected a brick garage on the rear of the two lots, with the only entrance to the garage being on lot 1346.  The appellants, Mr. and Mrs. Sannuti, eventually acquired title to Lot 1344 by foreclosure and the appellee, Ms. Clements, acquired title to Lot 1346 by deed.  The Sannutis then threatened to erect a partition through the garage on the property line separating lots 1344 and 1346.  Ms. Clements filed suit, asking for an injunction on the theory of an implied reservation for the part of the garage occupying lot 1344.  (Id. at 698.)  The court dismissed the action, essentially finding that the mortgage acquired by the grantor of the Sannutis' deed "did not contain any exception or reservation and did not mention the garage."  (Id. at 700.)  In fact, the mortgage included the land upon which the garage was located.  (Id.)  The Court concluded: "Had there been any

16

thought of reserving . . . the portion of the garage standing on the . . . premises [on lot 1344], language would have been used making it plain that such was the intention of the parties." (Id.)

In this matter, in contrast, there is plain language in the Agreement that the real property upon which the billboard structures sit is subject to the easements.  Moreover, contrary to Plaintiffs' argument, express easements are not limited to rights-of-way for ingress and egress purposes, but may instead convey a "right of use," or a right to maintain or construct structures. See, e.g., Dowgiel v. Reid, 59 A.2d 115, 121 (Pa. 1948) (construing an easement as granting rights "[t]o erect poles along [a] private road and to string on those poles wires for the transmission of electricity . . . ."); Zettlemoyer v. Transcontinental Gas Pipeline Corp., 657 A.2d 920 (Pa. 1995) (giving effect to an agreement granting an easement "for the purposes of laying, constructing, maintaining, operating, repairing, altering, replacing and removing pipelines. . . ."); Columbia Gas Transmission Corp. v. Savage, 863 F. Supp. 198, 199 (M.D. Pa. 1994) (upholding an easement granting rights "to maintain, operate, repair and remove [a] pipeline"); see also Black's Law Dictionary 548 (8th ed. 2004) (An easement can convey "a right to place or keep something on the servient estate . . . ."); cf. In re Condemnation Proceeding by South Whitehall Tp. Authority,  940 A.2d at 628 (recognizing that easements may be expansive and invasive).  In this case, it is clear that the parties intended that the easements grant Defendant the right to use the property for the display of billboards.  This right necessarily includes the use

of Plaintiffs' land to support the billboard structures.[11]

### C. Attorneys Fees and Costs

Lamar asserts an entitlement to recovery of its attorneys fees and costs in defending this action. (Def.'s Br. Supp., Dkt. Entry 15, at 28-29.) It seeks to enforce the express language of paragraph 14.1 of the Agreement, which states that, if any action is brought for the enforcement of the Agreement, "the successful or prevailing party shall be entitled to reasonable attorneys' fees and other costs incurred in that action in addition to any other relief to which the party may be entitled." (Agreement, Dkt. Entry 12-2, at 6-7.) Plaintiffs do not oppose this argument. Thus, Defendant will be granted reasonable attorneys fees and other costs incurred in defending this action.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted in all respects. Defendant will be awarded reasonable attorneys fees and costs.[12]

---

[11] Plaintiffs' argument would destroy the essential purpose of the easements. Under Plaintiffs' view, Defendant has only a right of access. Thus, if the parties were unable to reach an agreement on the terms of a lease for the placement of the billboards, Plaintiffs could evict Defendant, rendering the easements useless. Furthermore, the easements in perpetuity that Defendant bought would effectively be reduced to the term of any lease. Such interpretation of the easements would defeat the evident object of the parties' agreement, a result that contract interpretation seeks to avoid.

[12] Defendant shall submit its claim for attorneys' fees and costs by way of an appropriate post-judgment motion as required by Fed. R. Civ. P. 54(d), and within the time limits established by that rule.

Plaintiffs' Motion for Summary Judgment will be denied. An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POCONO REALTY COMPANY, EDWIN KRAWITZ, BARBARA KRAWITZ, Plaintiffs | : : : : | |
| v. | : : | 3:CV-08-0165 (JUDGE VANASKIE) |
| LAMAR ADVERTISING COMPANY A Corporation, Successor to Martin Media, A California Limited Partnership, Defendant | : : : : | |

ORDER

NOW, THIS 23rd DAY APRIL, 2009, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant Lamar Advertising Company's Motion for Summary Judgment (Dkt. Entry 11) is GRANTED.

2. Plaintiffs Pocono Realty Company and Edwin and Barbara Krawitzes' Motion for Summary Judgment (Dkt. Entry 17) is DENIED.

3. Judgment shall be entered in favor of Defendant and against Plaintiffs.

4. The Clerk of Court is directed to mark this matter CLOSED.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge